MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
MARVIN GUDIEL PEREZ SALES (A.K.A.
MENDEZ), RAFAEL HUERTA SILVA,
RENE RAMOS MENDEZ, and WILDER
PEREZ (A.K.A. EDUARDO PEREZ),
*individually and on behalf of others similarly
situated,*

                              *Plaintiffs*,

             -against-

ANK MANHATTAN LLC  (D/B/A ANKA
GRILL MEDITERRANEAN), CLH DINING
LLC  (D/B/A ANKA GRILL
MEDITERRANEAN), LEVENT ARIK ,
CHUCK DOE , and JORGE DOE ,

                             *Defendants.*
-------------------------------------------------------X

                   **COMPLAINT**

     **COLLECTIVE ACTION UNDER**
        **29 U.S.C. § 216(b)**

            **ECF Case**

       Plaintiffs Marvin Gudiel Perez Sales (a.k.a. Mendez), Rafael Huerta Silva, Rene Ramos

Mendez, and Wilder Perez (a.k.a. Eduardo Perez) , individually and on behalf of others similarly

situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates,

P.C., upon their knowledge and belief, and as against Ank Manhattan LLC (d/b/a Anka Grill

Mediterranean), CLH Dining LLC (d/b/a Anka Grill Mediterranean), ("Defendant Corporations"),

Levent Arik,  Chuck Doe, and  Jorge Doe, ("Individual Defendants"), (collectively, "Defendants"),

allege as follows:

## NATURE OF ACTION

      1.     Plaintiffs are former employees of Defendants Ank Manhattan LLC (d/b/a Anka Grill

Mediterranean), CLH Dining LLC (d/b/a Anka Grill Mediterranean), Levent Arik, Chuck Doe, and

Jorge Doe.

2.      Defendants own, operate, or control a Mediterranean restaurant, located at 642 Lexington Ave, New York, NY 10022 under the name "Anka Grill Mediterranean."

3.      Upon information and belief, individual Defendants Levent Arik, Chuck Doe, and Jorge Doe, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers, dishwashers and food preparers at the restaurant located at 642 Lexington Ave, New York, NY 10022.

5.      Plaintiffs were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to taking out the trash, cleaning the basement, cleaning the basement, grills, cleaning the salon and the refrigerator, cleaning the carpets and the air conditioners, twisting and tying up card boxes, cutting and peeling vegetables, preparing sauces and hummus, preparing food, doing the vegetable inventory, stocking products in the basement, wiping the windows, washing containers, preparing salads, cooking rice, cutting chicken and preparing bread  (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.     Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.     Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that was lower than the required tip-credit rate.

12.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

13.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

14.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' and other tipped employees' tips and made unlawful deductions from Plaintiffs' and other tipped employees' wages.

15.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

16.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

17.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York

Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

18.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

20.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion, of the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a Mediterranean restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

21.     Plaintiff Marvin Gudiel Perez Sales (a.k.a. Mendez) ("Plaintiff Marvin" or "Mr. Marvin") is an adult individual residing in New York County, New York.

22.     Plaintiff Marvin was employed by Defendants at Anka Grill Mediterranean from approximately March 9, 2014 until on or about May 2019.

23.     Plaintiff Rafael Huerta Silva ("Plaintiff Huerta" or "Mr. Huerta") is an adult individual residing in New York County, New York.

24.    Plaintiff Huerta was employed by Defendants at Anka Grill Mediterranean from approximately February 2015 until on or about October 2015 and then from approximately January 2019 until on or about July 17, 2019.

25.    Plaintiff Rene Ramos Mendez ("Plaintiff Ramos" or "Mr. Ramos") is an adult individual residing in New York County, New York.

26.    Plaintiff Ramos was employed by Defendants at Anka Grill Mediterranean from approximately March 2016 until on or about July 29, 2019.

27.    Plaintiff Wilder Perez (a.k.a. Eduardo Perez) ("Plaintiff Perez" or "Mr. Perez") is an adult individual residing in New York County, New York.

28.    Plaintiff Perez was employed by Defendants at Anka Grill Mediterranean from approximately August 2018 until on or about July 20, 2019.

*Defendants*

29.    At all relevant times, Defendants owned, operated, or controlled a Mediterranean restaurant, located at 642 Lexington Ave, New York, NY 10022 under the name "Anka Grill Mediterranean."

30.    Upon information and belief, Ank Manhattan LLC (d/b/a Anka Grill Mediterranean) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 642 Lexington Ave, New York, NY 10022.

31.    Upon information and belief, CLH Dining LLC (d/b/a Anka Grill Mediterranean) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 642 Lexington Ave, New York, NY 10022.

32.    Defendant Levent Arik is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Levent Arik is sued individually

in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Levent Arik possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

33.     Defendant Chuck Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Chuck Doe is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Chuck Doe possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

34.     Defendant Jorge Doe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Jorge Doe is sued individually in his capacity as a manager of Defendant Corporations. Defendant Jorge Doe possesses operational control over Defendant Corporations and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## **FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

35.     Defendants operate a Mediterranean restaurant located in the Midtown East Section of Manhattan in New York City.

36.     Individual Defendants, Levent Arik, Chuck Doe, and Jorge Doe, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, or control significant functions of Defendant Corporations.

37.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

38.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

39.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

40.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

41.     Upon information and belief, Individual Defendants Levent Arik and Chuck Doe operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b)  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f) intermingling assets and debts of their own with Defendant Corporations,

g) diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

42. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants have the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

43. In each year from 2014 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

44. In addition, upon information and belief, Defendants and/or their enterprise are directly engaged in interstate commerce. As an example, numerous items that are used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

45. Plaintiffs are former employees of Defendants who were employed as dishwashers, food preparers and ostensibly as delivery workers. However, they spent over 20% of each shift performing the non-tipped duties described above.

46. Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Marvin Gudiel Perez Sales (a.k.a. Mendez)*

47. Plaintiff Marvin was employed by Defendants from approximately March 9, 2014 until on or about May 2019.

48.     Defendants employed Plaintiff Marvin as a dishwasher, food preparer and ostensibly as a delivery worker.

49.     However, Plaintiff Marvin was also required to spend a significant portion of his work day performing the non-tipped duties described above.

50.     Although Plaintiff Marvin ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

51.     Plaintiff Marvin regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

52.     Plaintiff Marvin's work duties required neither discretion nor independent judgment.

53.     Throughout his employment with Defendants, Plaintiff Marvin regularly worked in excess of 40 hours per week.

54.     From approximately March 9, 2014 until on or about April 2014, Plaintiff Marvin worked as a delivery worker and a dishwasher from approximately 6:00 p.m. until on or about 11:30 p.m., 6 days a week (typically 33 hours per week).

55.     From approximately April 2014 until on or about June 2015, Plaintiff Marvin worked as a delivery worker and a dishwasher from approximately 11:00 a.m. until on or about 11:30 p.m., 6 days a week (typically 75 hours per week).

56.     From approximately July 2015 until on or about June 2016, Plaintiff Marvin worked from approximately 9:00 a.m. until on or about 7:30 p.m., 4 days a week and from approximately 9:00 a.m. until on or about 9:00 p.m., 2 days a week (typically 66 hours per week).

57.     From approximately July 2016 until on or about June 2017, Plaintiff Marvin worked as a food preparer from approximately 7:30 a.m. until on or about 4:30 p.m., 5 days a week and from approximately 7:00 a.m. until on or about 6:00 p.m., two days a week (typically 67 hours per week).

58.     From approximately July 2017 until on or about August 2018, Plaintiff Marvin worked as a food preparer from approximately 9:30 a.m. until on or about 4:00 p.m., 6 days a week (typically 39 hours per week).

59.     From approximately September 2018 until on or about April 2019, Plaintiff Marvin worked as a food preparer from approximately 9:30 a.m. to 10:00 a.m. until on or about 5:00 p.m. to 6:00 p.m., 5 days a week (typically 35 to 42.5 hours per week).

60.     From approximately May 1, 2019 until on or about May 15, 2019, Plaintiff Marvin worked as a food preparer from approximately 7:00 a.m. until on or about 3:00 p.m., 5 days a week (typically 40 hours per week).

61.     Throughout his employment, Defendants paid Plaintiff Marvin his wages in cash.

62.     From approximately March 9, 2014 until on or about April 2014, Defendants paid Plaintiff Marvin a fixed salary of $120 per week.

63.     From approximately April 2014 until on or about April 2015, Defendants paid Plaintiff Marvin a fixed salary of $300 per week.

64.     From approximately May 2015 until on or about September 2015, Defendants paid Plaintiff Marvin a fixed salary of $350 per week.

65.     From approximately October 2015 until on or about December 2015, Defendants paid Plaintiff Marvin a fixed salary of $515 per week.

66.     From approximately January 2016 until on or about August 2016, Defendants paid Plaintiff Marvin a fixed salary of $550 per week.

67.     From approximately September 2016 until on or about February 2018, Defendants paid Plaintiff Marvin a fixed salary of $650 per week.

68.     From approximately March 2018 until on or about September 2018, Defendants paid Plaintiff Marvin a fixed salary of $550 per week.

69.     From approximately October 2018 until on or about May 2019, Defendants paid Plaintiff Marvin a fixed salary of $450 per week.

70.     Plaintiff Marvin's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

71.     For example, Defendants required Plaintiff Marvin to work an additional 30 minutes past his scheduled departure time two to three times per week, and did not pay him for the additional time he worked.

72.     Defendants never granted Plaintiff Marvin any breaks or meal periods of any kind.

73.     Plaintiff Marvin was never notified by Defendants that his tips were being included as an offset for wages.

74.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Marvin's wages.

75.     Defendants withheld a portion of Plaintiff Marvin's tips; specifically, Defendants withheld a portion of all the tips customers paid him.

76.     From approximately March 9, 2014 until on or about April 2019, Plaintiff Marvin was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

77.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Marvin regarding overtime and wages under the FLSA and NYLL.

78.     Defendants did not provide Plaintiff Marvin an accurate statement of wages, as required by NYLL 195(3).

79.     Defendants did not give any notice to Plaintiff Marvin, in English and in Spanish (Plaintiff Marvin's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

80.    Defendants required Plaintiff Marvin to purchase "tools of the trade" with his own funds—including one bicycle.

*Plaintiff Rafael Huerta Silva*

81.    Plaintiff Huerta was employed by Defendants from approximately February 2015 until on or about October 2015 and then from approximately January 2019 until on or about July 17, 2019.

82.    Defendants employed Plaintiff Huerta as a food preparer and ostensibly as a delivery worker.

83.    However, Plaintiff Huerta was also required to spend a significant portion of his work day performing the non-tipped duties described above.

84.    Although Plaintiff Huerta ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

85.    Plaintiff Huerta regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

86.    Plaintiff Huerta's work duties required neither discretion nor independent judgment.

87.    Throughout his employment with Defendants, Plaintiff Huerta regularly worked in excess of 40 hours per week.

88.    From approximately February 2015 until on or about October 2015, Plaintiff Huerta worked from approximately 11:00 a.m. until on or about 11:15 p.m., 6 days a week (typically 73.5 hours per week).

89.    From approximately January 2019 until on or about February 2019, Plaintiff Huerta worked from approximately 10:00 a.m. until on or about 8:30 p.m., 6 days a week (typically 63 hours per week).

90.     From approximately February 2019 until on or about April 2019, Plaintiff Huerta worked from approximately 7:00 a.m. until on or about 3:00 p.m., 5 days a week and from approximately 11:00 a.m. until on or about 4:00 p.m., one day a week (typically 45 hours per week).

91.     From approximately April 2019 until on or about May 2019, Plaintiff Huerta worked from approximately 8:00 a.m. until on or about 3:00 p.m., 5 days a week (typically 35 hours per week).

92.     From approximately May 2019 until on or about July 17, 2019, Plaintiff Huerta worked from approximately 3:00 p.m. until on or about 11:00 p.m., 5 days a week and from approximately 11:00 a.m. until on or about 3:00 p.m., one day a week (typically 44 hours per week).

93.     Throughout his employment, Defendants paid Plaintiff Huerta his wages by check.

94.     From approximately February 2015 until on or about October 2015, Defendants paid Plaintiff Huerta a fixed salary of $300 per week.

95.     From approximately January 2019 until on or about March 2019, Defendants paid Plaintiff Huerta a fixed salary of $420 per week.

96.     From approximately April 2019 until on or about April 2019, Defendants paid Plaintiff Huerta a fixed salary of $350 per week.

97.     From approximately April 2019 until on or about July 17, 2019, Defendants paid Plaintiff Huerta $15.00 per hour for all his hours worked.

98.     Plaintiff Huerta's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

99.     For example, Defendants required Plaintiff Huerta to work an additional 20 to 30 minutes past his scheduled departure time 5 days a week, and did not pay him for the additional time he worked.

100.    Defendants never granted Plaintiff Huerta any breaks or meal periods of any kind.

101.    Plaintiff Huerta was never notified by Defendants that his tips were being included as an offset for wages.

102.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Huerta's wages.

103.    From approximately February 2015 until on or about April 2019, Plaintiff Huerta was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

104.    On one occasion, Defendants required Plaintiff Huerta to sign a document, the contents of which he was not allowed to review in detail.

105.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Huerta regarding overtime and wages under the FLSA and NYLL.

106.    Defendants did not provide Plaintiff Huerta an accurate statement of wages, as required by NYLL 195(3).

107.    Defendants did not give any notice to Plaintiff Huerta, in English and in Spanish (Plaintiff Huerta's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

108.    Defendants required Plaintiff Huerta to purchase "tools of the trade" with his own funds—including one bicycle.

*Plaintiff Rene Ramos Mendez*

109.    Plaintiff Ramos was employed by Defendants from approximately March 2016 until on or about July 29, 2019.

110.    Defendants ostensibly employed Plaintiff Ramos as a delivery worker.

111.    However, Plaintiff Ramos was also required to spend a significant portion of his work day performing the non-tipped duties described above.

112.     Although Plaintiff Ramos ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

113.     Plaintiff Ramos regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

114.     Plaintiff Ramos's work duties required neither discretion nor independent judgment.

115.     Throughout his employment with Defendants, Plaintiff Ramos regularly worked in excess of 40 hours per week.

116.     From approximately March 2016 until on or about July 29, 2019, Plaintiff Ramos worked from approximately 7:00 a.m. until on or about 3:00 p.m., 5 days a week and from approximately 11:00 a.m. until on or about 3:00 p.m., 2 days a week (typically 48 hours per week).

117.     Throughout his employment, Defendants paid Plaintiff Ramos his wages by check.

118.     From approximately March 2016 until on or about May 20, 2019, Defendants paid Plaintiff Ramos a fixed salary of $375 per week.

119.     From approximately May 20, 2019 until on or about July 29, 2019, Defendants paid Plaintiff Ramos $11.00 per hour for all his hours worked.

120.     For approximately one day of work, Defendants did not pay Plaintiff Ramos any wages for his work.

121.     Plaintiff Ramos's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

122.     For example, Defendants required Plaintiff Ramos to work an additional 1 hour past his scheduled departure time every day, and did not pay him for the additional time he worked.

123.     Defendants never granted Plaintiff Ramos any breaks or meal periods of any kind.

124.     Plaintiff Ramos was never notified by Defendants that his tips were being included as an offset for wages.

125. Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ramos's wages.

126. From approximately March 2016 until on or about April 2019, Plaintiff Ramos was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

127. No notification, either in the form of posted notices or other means, was ever given to Plaintiff Ramos regarding overtime and wages under the FLSA and NYLL.

128. Defendants did not provide Plaintiff Ramos an accurate statement of wages, as required by NYLL 195(3).

129. Defendants did not give any notice to Plaintiff Ramos, in English and in Spanish (Plaintiff Ramos's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Wilder Perez (a.k.a. Eduardo Perez)*

130. Plaintiff Perez was employed by Defendants from approximately August 2018 until on or about July 20, 2019.

131. Defendants ostensibly employed Plaintiff Perez as a delivery worker.

132. However, Plaintiff Perez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

133. Although Plaintiff Perez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

134. Plaintiff Perez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

135. Plaintiff Perez's work duties required neither discretion nor independent judgment.

136. Throughout his employment with Defendants, Plaintiff Perez regularly worked in excess of 40 hours per week.

137.    From approximately August 2018 until on or about April 2019, Plaintiff Perez worked from approximately 3:00 p.m. until on or about 11:00 p.m., 4 days a week and from approximately 3:00 p.m. until on or about 12:00 a.m., 2 days a week (typically 50 hours per week).

138.    From approximately May 2019 until on or about July 20, 2019, Plaintiff Perez worked from approximately 5:00 p.m. until on or about 11:00 p.m., 4 days a week and from approximately 5:00 p.m. until on or about 11:40 p.m., 2 days a week (typically 37.32 hours per week).

139.    From approximately August 2018 until on or about April 2019, Defendants paid Plaintiff Perez his wages in cash.

140.    From approximately May 2019 until on or about July 2019, Defendants paid Plaintiff Perez his wages by check.

141.    From approximately August 2018 until on or about April 2019, Defendants paid Plaintiff Perez a fixed salary of $400 per week.

142.    From approximately May 2019 until on or about July 2019, Defendants paid Plaintiff Perez $15.00 per hour for all his hours worked.

143.    Plaintiff Perez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

144.    For example, Defendants required Plaintiff Perez to work an additional 40 minutes past his scheduled departure time two to three days a week, and did not pay him for the additional time he worked.

145.    Defendants never granted Plaintiff Perez any breaks or meal periods of any kind.

146.    Plaintiff Perez was never notified by Defendants that his tips were being included as an offset for wages.

147.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Perez's wages.

148.    From approximately August 2018 until on or about April 2019, Plaintiff Perez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

149.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Perez regarding overtime and wages under the FLSA and NYLL.

150.    Defendants did not provide Plaintiff Perez an accurate statement of wages, as required by NYLL 195(3).

151.    In fact, Defendants adjusted Plaintiff Perez's paystubs so that they reflected inaccurate wages and hours worked.

152.    Defendants did not give any notice to Plaintiff Perez, in English and in Spanish (Plaintiff Perez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

153.    Defendants required Plaintiff Perez to purchase "tools of the trade" with his own funds—including one bicycle and a helmet.

*Defendants' General Employment Practices*

154.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

155.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked..

156.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

157.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

158.    Defendants required Plaintiffs and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

159.    Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

160.    Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

161.    Plaintiffs and all other tipped workers were paid at a rate that was lower than the lower tip-credit rate by Defendants.

162.    However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

163.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

164.    In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower than the lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

165.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

166.    Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

167.    Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received. As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

168.    Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

169.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit or pay them the full hourly minimum wage.

170.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

171.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

172.    Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked.

173.    Defendants paid Plaintiffs their wages in cash or checks.

174.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

175.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

176.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

177.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

178.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

179.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the

employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

180.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

181.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

182.     The claims of Plaintiffs stated herein are similar to those of the other employees.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

183.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

184.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

185.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

186.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

187.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

188.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

189.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

190.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

191.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

192.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

193.    Plaintiffs (and the FLSA Class members)were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

194.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

195.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

196.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

197.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

198.    Plaintiffs were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE OVERTIME PROVISIONS**
**OF THE NEW YORK STATE LABOR LAW**

199.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

200.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

201.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

202.    Plaintiffs were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**
**OF THE NEW YORK COMMISSIONER OF LABOR**

203.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

204.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

205.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

206.    Plaintiffs were damaged in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE NOTICE AND RECORDKEEPING**
**REQUIREMENTS OF THE NEW YORK LABOR LAW**

207.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

208.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by

the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

209.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION
## VIOLATION OF THE WAGE STATEMENT PROVISIONS
## OF THE NEW YORK LABOR LAW

210.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

211.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

212.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION
## RECOVERY OF EQUIPMENT COSTS

213.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

214.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

215.    Plaintiffs were damaged in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION**
**OF THE NEW YORK LABOR LAW**

216.    Plaintiff Marvin repeats and realleges all paragraphs above as though fully set forth herein.

217.    At all relevant times, Defendants were Plaintiff Marvin's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

218.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

219.    Defendants unlawfully misappropriated a portion of Plaintiff Marvin's tips that were received from customers.

220.    Defendants knowingly and intentionally retained a portion of Plaintiff Marvin's tips in violations of the NYLL and supporting Department of Labor Regulations.

221.    Plaintiff Marvin was damaged in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**
**VIOLATION OF THE TIMELY PAYMENT PROVISIONS**
**OF THE NEW YORK LABOR LAW**

222.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

223.    Defendants did not pay Plaintiffs  on a regular weekly basis, in violation of NYLL §191.

224.    Defendants are liable to each Plaintiff in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency

of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as

to Plaintiffs;

(l)      Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)      Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)      Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)      Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)      Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)      Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)       Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)      All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
August 7, 2019

MICHAEL FAILLACE & ASSOCIATES, P.C.

By: _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 26, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Marvin Gudiel Perez Sales (a.k.a. Mendez)

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      26 de julio 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 26, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Rafael Huerta Silva

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      26 de julio 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                        Telephone: (212) 317-1200
New York, New York 10165                                        Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

July 29, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                     Rene Ramos Mendez

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     29 de julio 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
## Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

July 26, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:               Wilder Alexander Perez Baten

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                26 de julio 2019

*Certified as a minority-owned business in the State of New York*